UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| COMMONWEALTH OF MASSACHUSETTS,<br>                Plaintiff,<br><br>      v.<br><br>UAVE LLC,<br>                Defendant. | Case No. 1:20-cv-11617 |

**CONSENT DECREE**

WHEREAS, UAVE LLC ("UAVE") operates a sand and gravel mining facility at 973 University Avenue in Norwood, Massachusetts (the "Facility");

WHEREAS, the Commonwealth of Massachusetts ("Commonwealth"), acting through the Office of the Attorney General ("Attorney General's Office"), alleges in its Complaint that UAVE has discharged industrial stormwater contaminated with sediment and other pollutants from the Facility into the Town of Norwood's municipal storm drain system, which discharges into Purgatory Brook, a tributary of the Neponset River, without complying with the federal stormwater permit issued by the United States Environmental Protection Agency ("Stormwater Permit"), in violation of the Federal Clean Water Act, 33 U.S.C. §1331(a); *et seq*. (the "Clean Water Act" or "the Act").

WHEREAS, on February 18, 2020, the Attorney General's Office provided notice of the alleged violations and of the Attorney General's Office's intention to file suit against UAVE to the Administrator of the United States Environmental Protection Agency ("EPA"); the Administrator of EPA Region 1; the Massachusetts Department of Environmental Protection; and to the Company, pursuant to Section 505 of the Federal Clean Water Act, 33 U.S.C. §1365;

1

WHEREAS, today the Attorney General filed a complaint against UAVE in the United States District Court, District of Massachusetts;

WHEREAS, UAVE denies the allegations in the complaint;

WHEREAS, following receipt of the February 18, 2020 notice, UAVE has taken certain steps, including developing and implementing plans to obtain coverage under the Stormwater Permit and to eliminate stormwater discharges from the Facility up to the amount of stormwater generated during a 100-year storm event and will otherwise properly direct, control, and monitor its industrial stormwater discharges;

WHEREAS, UAVE anticipates that these steps, together with the implementation of the measures set forth herein and in UAVE's Stormwater Pollution Prevention Plan ("SWPPP") for the Facility, will enable the company to comply with the requirements of the Federal Clean Water Act;

WHEREAS, the Attorney General's Office and UAVE have reached an agreement to resolve the ligation; and

WHEREAS, this Consent Decree shall be submitted to the United States Department of Justice for the 45-day statutory review period, pursuant to 33 U.S.C. § 1365(c).

NOW THEREFORE, based on the Joint Motion of the Parties for Entry of this Consent Decree, and before taking any testimony and without the adjudication of any issues of fact or law except as provided in Section 1 (Jurisdiction and Venue), it is ADJUDGED, ORDERED AND DECREED, as follows:

## I. JURISDICTION AND VENUE

1. This Court has jurisdiction over the parties and the subject matter of this action pursuant to Section 505(a)(1)(A) of the Federal Clean Water Act, 33 U.S.C. § 1365(a)(1)(A), and 28 U.S.C. § 1331 (an action arising under the laws of the United States). Venue is proper in the District of Massachusetts pursuant to Section 505(c)(1) of the Federal Clean Water Act, 33 U.S.C. § 1365(c)(1).

2. The Complaint alleges facts that, if proven, would constitute good and sufficient grounds for the relief set forth in this Consent Decree.

## II. EFFECTIVE DATE

3. The effective date of this Consent Decree ("Effective Date") shall be when the Court enters the Consent Decree on the docket.

## III. PARTIES BOUND

4. This Consent Decree shall constitute a binding agreement between the parties, and UAVE consents to its entry as a final judgment by the Court and waives all rights of appeal upon its entry on the docket. If the Court declines to enter this Consent Decree on any ground except one related to form, this Consent Decree is voidable at the option of any party within fourteen (14) days of the Court's decision. If, on the other hand, the Court determines that substantive modifications to this Consent Decree are necessary prior to the Court's entry of it, the parties shall enter into good faith negotiations to discuss the modifications, and this Consent Decree shall be void unless the Commonwealth and UAVE agree otherwise in writing within fourteen (14) days of the Court's decision.

5. The provisions of this Consent Decree shall apply to and bind UAVE and any person or entity acting by, for, or through UAVE, including UAVE's managers, directors,

officers, supervisors, employees, agents, servants, attorneys-in-fact, successors, and assigns, and those persons in active concert or participation with UAVE who receive notice of this Consent Decree.

6. UAVE shall provide a true copy of this Consent Decree to all of its managers, directors, officers, supervisors, employees, and agents whose duties might include compliance with any provision of this Consent Decree. UAVE shall also provide a copy of this Consent Decree to any contractor retained by it to perform work required under this Consent Decree and shall condition any such contract on the contractor's performance of the work in compliance with the terms of this Consent Decree.

7. For three (3) years following the Effective Date, no change or transfer in ownership, management, or operation of the Facility, whether in compliance with the procedures of this Paragraph or otherwise, shall relieve UAVE or the company's managers, officers, directors, agents, and/or servants of any obligation under this Consent Decree. At least thirty (30) days prior to any such change or transfer of ownership, management, or operation of the Facility that occurs within three (3) years of the Effective Date, UAVE shall provide a copy of this Consent Decree to the proposed transferee or new manager or operator and shall simultaneously provide written notice of the prospective change or transfer in ownership, management, or operation of the Facility, together with a copy of the proposed written change or transfer agreement, to the Attorney General's Office in accordance with Section X (Notices) of this Consent Decree. Any attempt to change or transfer ownership, management, or operation of the Facility without complying with this paragraph shall constitute a violation of this Consent Decree.

8.   UAVE shall not violate this Consent Decree, and shall not allow its officers, directors, agents, servants, attorneys-in-fact, employees, successors, assigns, or contractors to violate this Consent Decree. In any action to enforce this Consent Decree, UAVE shall not raise as a defense the failure by any of UAVE's managers, directors, officers, supervisors, employees, agents, or contractors to take any actions necessary to comply with the provisions of this Consent Decree.

9.   In addition to any relief specifically provided in this Consent Decree, UAVE understands and agrees that violations of this Consent Decree may be punishable by contempt pursuant to an appropriate civil contempt proceeding.

## IV. PAYMENTS

10.   Within fifteen (15) days of the Effective Date, UAVE shall pay to the Neponset River Watershed Association the sum of fifty-thousand dollars ($50,000) for projects to improve water quality in the Town of Norwood within the Neponset River watershed. UAVE's payment shall be made by certified check, treasurer's check, or bank check and sent to the Neponset River Watershed Association c/o Ian Cooke, President, 2173 Washington Street, Canton, MA 02021. A copy of the check shall be contemporaneously provided by UAVE to the Commonwealth in accordance with the notice provision of Section X (Notices), below.

11.   Within fifteen (15) days of the Effective Date UAVE shall reimburse the Attorney General's Office in the amount of twenty-five thousand dollars ($25,000) to defray the Attorney General's Office's costs, including attorney fees, incurred in connection with its work on this matter. Payment should be made by Electronic Funds Transfer ("EFT") to the Commonwealth of Massachusetts in accordance with current EFT procedures, using the following account information:

COMMONWEALTH OF MASSACHUSETTS, OFFICE OF ATTORNEY GENERAL



REFERENCE: DOCKET NO. 1:20-cv-11617

and shall include the following payment information: "*EPD, Commonwealth v. UAVE LLC*" Any payments received by the Commonwealth after 4:00 P.M. (Eastern Time) will be credited on the next business day. At the time of payment, UAVE shall send notice that such payment has been made to the Commonwealth by electronic mail in accordance with the notice provision of Section X (Notices), below.

## V. INJUCTIVE RELIEF

12. UAVE agrees to operate the Facility in compliance with the applicable requirements of the Stormwater Permit, including any amendments thereto, and with the Federal Clean Water Act.

13. UAVE will eliminate stormwater discharges from the Facility up to the amount of stormwater generated during a 100-year storm event and will otherwise properly direct, control, and monitor its industrial stormwater discharges. UAVE will not recommence operations at the Facility until all stormwater control measures detailed below have been implemented in their entirety. UAVE will complete the stormwater improvements shown on a plan titled "Figure 2, MSGP SWPPP Proposed Stormwater Improvements," dated April 21, 2020 (the "Improvements Plan"), a reduced scale copy of which is attached as Exhibit A, by November 15, 2020. Such improvements include the following:

a. build a block retaining wall connecting two existing retaining walls, to inhibit the flow of stormwater off the southern edge of the Facility, as shown in Exhibit A hereto;

b. install a stone waterway near the mobile equipment fueling area to reduce sediment transport by stormwater or equipment from the unpaved portion of the Facility to the driveway, as shown in Exhibit A;

c. construct a second detention basin uphill and to the east of the Facility's driveway, as shown in Exhibit A;

d. build a new block retention wall adjacent to the second detention basin, as show in Exhibit A;

e. expand the existing detention basin so that both detention basins will together contain all stormwater generated during a 100-year storm event;

f. regrade the Facility driveway where it intersects with University Avenue to ensure that all stormwater flowing down the driveway is directed into the detention basin and does not leave the Facility, as shown in Exhibit A; and

g. ensure that stormwater does not enter the two municipal catch basins located on the Facility's driveway by either (1) raising the elevations of the catch basin openings or (2) plugging the catch basins.

## VI. FACILITY ACCESS AND SUBMISSION OF RECORDS

14. UAVE shall permit the Attorney General's Office to visit the Facility during normal daylight business hours during each year for the three (3) years following the Effective Date, provided that the Attorney General's Office provide at least twenty-four (24) hours of prior notice. During any site visit, the Attorney General's Office shall have access to and permission

to copy any documentation required to be kept on site by the Stormwater Permit and may collect samples and take photos at the Facility.

15. For a period of three (3) years following the Effective Date, UAVE shall provide the Attorney General's Office with the following documents in accordance with Section X (Notices), below:

    a. Copies of all documents UAVE submits to EPA, the Commonwealth of Massachusetts, and/or the Town of Norwood concerning UAVE's stormwater controls or the quality of UAVE's stormwater discharges, including but not limited to all documents and reports submitted as required by the Stormwater Permit. Such documents and reports shall be sent to the Attorney General's Office on the same day that they are submitted to the governmental entity.

    b. All maintenance records for the Facility's stormwater pollution control systems. Maintenance records will be provided within ten (10) business days of UAVE's receipt of a written request by the Attorney General's Office.

    c. Timely written notice of any planned or completed changes to UAVE's stormwater control measures, with dates of anticipated or completed changes.

    d. Current copies UAVE's SWPPP within three (3) business days of a request by the Attorney General's Office.

    e. Laboratory reports and analytical results of stormwater sampling performed by or for the company within ten (10) business days of receiving the reports.

16. Any information provided by UAVE may be used by the Commonwealth in any proceeding to enforce the provisions of this Consent Decree and as otherwise permitted by law.

17. The Consent Decree in no way limits or affects any right of entry and inspection or any right to obtain information held by the Commonwealth of Massachusetts or any of its branches, departments, agencies, or offices pursuant to applicable federal or state laws, regulations, or permits, nor does it limit or affect any duty or obligation of the company to maintain documents, records, or other information imposed by applicable federal or state laws, regulations, or permits.

## VII.  INTERESTS AND COLLECTIONS

18. If any payment required pursuant to this Consent Decree is late or not made, UAVE shall pay interest on any overdue amount for the period of such nonpayment at the rate of twelve percent (12%) per annum pursuant to G.L. c. 321 § 6B, computed monthly, and shall pay all expenses associated with collection by the Commonwealth of the unpaid amounts and interest for any period of nonpayment after the payment obligation becomes due, including reasonable attorney fees.

## VIII. EFFECT OF CONSENT DECREE

19. Upon compliance by UAVE with the requirements of this Consent Decree, (a) this Consent Decree shall resolve UAVE's liability for the specific legal claims alleged against them in the Complaint, and (b) the Commonwealth shall release UAVE from liability for the specific legal claims alleged against them in the Complaint. Notwithstanding the foregoing, the Commonwealth expressly reserves all claims for injunctive relief for violations of all the statutes and regulations referred to in the Complaint, whether related to the specific legal claims resolved by the Consent Decree or otherwise.

20. Nothing in this Consent Decree (a) shall bar any action by the Commonwealth on any legal claim not specifically pleaded in the Complaint or for any violations not revealed to the Commonwealth; (b) shall be deemed to excuse non-compliance by UAVE, or any of the persons or entities otherwise bound by this Consent Decree with any law or regulation; or (c) shall preclude a separate or ancillary action by the Commonwealth to enforce the terms of this Consent Decree or any permit or other approval issued by the Massachusetts Department of Environmental Protection or EPA relative to the Facility.

21. This Consent Decree is not a permit, or a modification of any permit, under any federal, state, or local laws or regulations. UAVE is responsible for achieving and maintaining complete compliance with all applicable federal, state, and local laws, regulations, and permits; and UAVE's compliance with this Consent Decree shall not be a defense to any action commenced pursuant to any such laws, regulations, or permits, except as set forth herein. The Attorney General's Office does not, by its consent to the entry of this Consent Decree, warrant or aver in any manner that UAVE's compliance with any aspect of this Consent Decree will result in compliance with provisions of any federal, state, or local law, regulation, or permit.

22. Nothing in this Consent Decree shall be construed to create any rights in, or grant any cause of action to, any person not a party to this Decree.

## IX. MISCELLANEOUS

23. UAVE understands and agrees that, pursuant to 11 U.S.C. § 523(a)(7), the costs or sums that UAVE may be required to pay under this Consent Decree are not subject to discharge in any bankruptcy.

24. UAVE shall pay all expenses, including reasonable attorney fees and costs, incurred by the Commonwealth in the enforcement of this Consent Decree against them.

25. Nothing in this Consent Decree shall prevent UAVE from taking any action otherwise required by law.

26. The titles in this Consent Decree have no independent legal significance and are used merely for the convenience of the parties.

27. In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or State or Federal holiday, the period shall run until the close of business on the next Business Day.

28. UAVE is responsible for complying with this Consent Decree and is liable for violations of this Consent Decree.

29. Signature of the parties transmitted by scanning and email are binding.

## X. NOTICES

30. Unless otherwise specified in this Consent Decree, notices and submissions required by this Decree shall be made in writing by email to the following addresses:

For the Attorney General's Office and the Commonwealth:

Nora J. Chorover
Special Assistant Attorney General
Environmental Protection Division
Office of the Attorney General
One Ashburton Place, 18th Floor
Boston, MA 02108
Nora.chorover@mass.gov

For UAVE:

Joseph Federico, Manager
UAVE LLC
1039 East Street
Dedham, MA 02026
jofedjr@aol.com

With a copy to:

Daniel J. Bailey III
Pierce Atwood LLP
100 Summer Street
Boston, MA 02111
dbailey@pierceatwood.com

or, to such other place or to the attention of such other individual as a party may from time to time designate by written notice to the other parties to this Consent Decree.

## XI. INTEGRATION

31. Except as expressly set forth in this Consent Decree, this Consent Decree sets forth all of the obligations of the parties and represents the complete and exclusive statement of the parties with respect to the terms of the settled agreement embodied by this Consent Decree; any other representations, communications, or agreements by or between parties shall have no force and effect.

## XII. MODIFICATION

32. The terms of this Consent Decree may be modified only by a subsequent written agreement signed by the parties. Where the modification constitutes a material change to any term of this Consent Decree, it shall be effective only by written approval of the parties and the approval of the Court. The Commonwealth's decision to extend a deadline in this Consent Decree shall not constitute a material change for purposes of this Paragraph.

## XIII. AUTHORITY OF SIGNATORY

33. The person signing this Consent Decree on behalf of UAVE acknowledges: (a) that he or she has personally read and understands each of the numbered Paragraphs of this Consent Decree, including any Appendices attached to it; (b) that, to the extent necessary, UAVE's managers, directors, officers, and shareholders have consented to UAVE entering this

Consent Decree and to its entry as a Final Judgement; and (c) that he or she is authorized to sign and bind UAVE to the terms of this Consent Decree.

## XIV. RETENTION OF JURISDICTION

34. The Court shall retain jurisdiction over this case for purposes of resolving disputes that arise under this Consent Decree, entering orders modifying this Consent Decree, or effectuating or enforcing compliance with the terms of this Consent Decree.

## XV. FINAL JUDGEMENT

35. Upon approval and entry of this Consent Decree by the Court this Consent Decree shall constitute a Final Judgement of the Court.

Office of the Attorney General

By: Nora J. Chorover, SAAG   Dated: 8/23/2020

UAVE LLC

By: Joseph Federico, Jr.   Dated: 8-14-2020

IT IS SO ORDERED. JUDGMENT is hereby entered in accordance with the foregoing.

By the Court:

_____

United States District Court

Dated: _____

EXHIBIT A

